Filed 8/19/14  P. v. Thomas CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL DESHAWN THOMAS,<br><br>Defendant and Appellant. | B251905<br><br>(Los Angeles County<br>Super. Ct. No. KA098161) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mike Camacho, Judge.  Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey and David Zarmi, Deputy Attorneys General, for Plaintiff and Respondent.

_____

# INTRODUCTION

Michael Deshawn Thomas appeals from a judgment and sentence, following his convictions for forcible rape of two child victims, committing lewd acts on the victims and for dissuading the victims from testifying. He contends that the trial court improperly allowed evidence that appellant was a gang member and improperly denied his motion for a mistrial on that basis. For the reasons stated below, we affirm.

# PROCEDURAL HISTORY

In an amended information, appellant was charged with forcible rape of two child victims (Pen. Code, § 261, subd. (a)(2); counts 1 & 2),[1] forcible lewd act on a child under 14 years of age (§ 288, subd. (b)(1); count 3), forcible lewd act on a child 14 years of age by a person 10 years older (§ 288, subd. (c)(1); counts 4 & 5), and dissuading a witness by force or threat (§ 136.1, subd. (c)(1); counts 6 & 7). As to counts 1 through 3, it was further alleged that there were multiple victims (§ 667.61, subds. (b) & (e)). Appellant pled not guilty and denied the special allegations.

Following a jury trial, appellant was found guilty as charged in counts 1 and 3 through 7. The jury found the multiple victims allegations to be true as to counts 1 and 3. The jury found appellant not guilty of the charged crime in count 2, but instead guilty of the lesser included offense of battery (§ 242).

Appellant was sentenced to 36 years 4 months to life in state prison: 15 years to life for each of counts 1 and 3, pursuant to section 667.61; one third the midterm of two years, or eight months, for each of counts 4 and 5; the upper term of four years for count 6; and one third the midterm of three years, or one year, for count 7. He was also sentenced to a concurrent term of six months for count 2.

---

[1]     All further statutory citations are to the Penal Code, unless otherwise stated.

Appellant timely noticed an appeal from the judgment of conviction.

**FACTUAL BACKGROUND**[2]

A.  *Prosecution Case-in-Chief*

On the evening of June 3, 2012, appellant sexually assaulted and raped his daughter and her female friend. Appellant's daughter was 10 years old at the time of the incident, and her friend was 14 years old. Appellant was 32. At trial, the victims testified that in order to get them to comply with his demands, appellant threatened to kill them. He also threatened to kill them if they told anyone about the assaults. Appellant's daughter was afraid of appellant because he had previously beaten her and had used violence against other people. The friend believed appellant's threats because appellant had told her that he was a Rolling 60s gang member. She also had witnessed appellant beat his wife on one occasion.

The next morning, appellant left to take one of his sons to the doctor. When appellant's girlfriend, Maria Magdalena Jones, came over shortly thereafter, the girls told her what had happened. They then went to the house of the older girl's aunt, where the girl called 911.

Forensic nurse examiner Jennifer Rivera examined the victims that evening. Rivera took swab samples for DNA analysis from different parts of the victims' bodies. Rivera also conducted an examination of appellant the next day, and took swab samples from different parts of his body.

Mariann Shea, senior criminalist for the Los Angeles County Sheriff's Department, tested the samples for a DNA match. DNA saliva samples from appellant's daughter's left and right breasts matched appellant's DNA profile. The DNA saliva sample from her friend's left breast also was matched to appellant.

---

[2]  As appellant challenges only the gang evidence presented at trial, we summarize the relevant trial testimony.

3

DNA semen samples from the friend's vulva and stomach were matched to appellant's DNA profile.

B. *Defense Case*

Appellant testified on his own behalf. He denied assaulting or raping the girls. Appellant admitted whipping his daughter with a belt on one prior occasion, after he caught her surreptitiously watching a pornographic video being played by his girlfriend, Jones. On the night of the incident, appellant caught the girls in the shower together. When his daughter talked back to him, he hit her in the mouth. Appellant had engaged in sex with Jones earlier that evening. He had used a condom that he threw in the trashcan. Appellant speculated that his daughter might have heard him having sex with Jones.

Appellant admitted having a sexual relationship with the mother of his children when she was 15 years old and he was 20 years old. However, he denied having a sexual preference for young girls. Appellant also denied being a Rolling 60s gang member. He stated that he has never been arrested for gang activity. Appellant used gang terminology because he grew up in Rolling 60s territory.

Jones had known appellant since she was 10 years old; they grew up in the same neighborhood. Jones confirmed that on the night of the incident, she had sex with appellant, who used a condom. Jones was unaware that appellant was a gang member, but had heard him use gang terminology.

Kendrick Smith, a very close friend of appellant's, testified that he did not know that appellant was a gang member. He knew that the Rolling 60s gang was a Crips gang, and had heard appellant use Crips slang.

C.    *Rebuttal*

When Jones was interviewed by Police Officer Alan Pucciarelli on June 4, 2012, she did not tell him that she had had sex with appellant that night or that he had used a condom.

## DISCUSSION

Appellant contends that the trial court improperly allowed evidence that he was a gang member and improperly denied his motion for a mistrial on that basis. We disagree.

A.    *Factual Background*

During the trial, at a sidebar, defense counsel moved for mistrial based on purported prosecutorial misconduct during cross-examination of defense witness Smith.  After this motion was denied, counsel then expressed concern about the prosecution's continued introduction of gang evidence, as there was no gang allegation in the information.  The court responded:  "I permitted the inquiry [into appellant's gang membership] without interruption because it does have some relevancy, particularly with [the victims] in terms of the fear that they experienced in complying with the defendant's verbal request on the night in question. . . .  I've permitted the inquiry because . . . whether or not they are even correct, he very well could not be a gang member, but if they believed he was, that is what is relevant and that would definitely make the inquiry admissible."  The court denied any motion for mistrial due to the gang evidence, finding that the evidence would not deprive appellant of a fair trial.

During closing argument, the prosecutor told the jury that it was not important whether appellant actually was a member of the Rolling 60s gang. Rather, what mattered was that his daughter's friend thought he was a gang

5

member, was fearful, and for that reason complied with his demands. The prosecutor made no further mention of the gang evidence.

B.     *Analysis*

Under Evidence Code section 352, a trial court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. (Evid. Code, § 352.) "In cases *not* involving the gang enhancement, . . . evidence of gang membership is potentially prejudicial and should not be admitted if its probative value is minimal. [Citation.] But evidence of gang membership is often relevant to, and admissible regarding, the charged offense. Evidence of the defendant's gang affiliation -- including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, rivalries, and the like -- can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime." (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1049.) "The admission of gang evidence over an Evidence Code section 352 objection will not be disturbed on appeal unless the trial court's decision exceeds the bounds of reason." (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1369.) Moreover, "'[t]he admission of relevant evidence will not offend due process unless the evidence is so prejudicial as to render the defendant's trial fundamentally unfair.'" (*People v. Jones* (2013) 57 Cal.4th 899, 949.) Similarly, appellate courts "review a ruling on a motion for mistrial for an abuse of discretion, and such a motion should be granted only when a party's chances of receiving a fair trial have been irreparably damaged." (*People v. Ayala* (2000) 23 Cal.4th 225, 283.)

Here, evidence of appellant's possible membership in the Rolling 60s gang was relevant and highly probative, as it helped to show why the daughter's friend was afraid of appellant and complied with his demands. Moreover, appellant was able to challenge his gang membership and explain why he used gang terminology. Thus, the probative value of the gang evidence was not substantially outweighed by the danger of undue prejudice. On this record, we conclude the court did not abuse its discretion in admitting the gang evidence.

Likewise, the admission of the gang evidence did not deprive appellant of his due process right to a fair trial. *People v. Mendoza* (2000) 24 Cal.4th 130 is instructive. There, the criminal was charged with committing numerous crimes against victims; no gang allegations were charged. (*Id*. at p. 148.) At trial, a victim testified that during the robbery and kidnapping, the defendant had said he was "'a homeboy and that he had his friends around someplace.'" She later testified that she understood the term "'homeboy'" to mean the defendant was in a gang. The trial court overruled defense counsel's objection, finding the question relevant to show that the victim was in a state of fear at the time of the offenses. Another victim also testified that defendant said he was a "'homeboy,'" and that "'he had people around him.'" Finally, during closing argument, the prosecutor referred to another robbery victim's description of defendant's hair as "combed back like Cholo style, gang style." (*Id*. at pp. 162-163.) Our Supreme Court found these comments did not result in gross unfairness amounting to a denial of defendant's constitutional right to due process. (*Id*. at p. 163.) In the instant case, the older girl testified that appellant had told her he was a gang member. The prosecutor referred to that testimony, making clear its relevance, but did not elaborate further. Appellant, his girlfriend, and his close friend testified he used gang terminology because he grew up in gang territory, not because he was a

member of the gang.  On this record, the gang evidence did not result in gross unfairness denying appellant his due process right to a fair trial.  For the same reasons, the trial court did not err in denying appellant's motion for a new trial based on the admission of the evidence.

## DISPOSITION

The judgment is affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**



MANELLA, J.


We concur:



EPSTEIN, P. J.



EDMON, J.*


_____

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section  6 of the California Constitution.